EILEEN M. TEICHERT, City Attorney (SBN 167027)
**BRETT M. WITTER, Supervising Deputy City Attorney (SBN168340)**
CITY OF SACRAMENTO
Mailing: P.O. Box 1948, Sacramento, CA  95812-1948
Office: 915 I Street, 4th Floor, Sacramento, CA  95814
Telephone: (916) 808-5346
Telecopier: (916) 808-7455

Attorneys for Defendants
CITY OF SACRAMENTO, JOHN F. SHIREY
and JIM COMBS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCCUPY SACRAMENTO, et al.<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF SACRAMENTO, JOHN F. SHIREY Sacramento City Manager in his official capacity; JIM COMBS, Sacramento City Director of Parks and Recreation, in his official capacity.<br><br>　　　　Defendants. | Case No.: 2:11-cv-02873-MCE-GGH<br><br>**OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER BY DEFENDANTS CITY OF SACRAMENTO, JOHN SHIREY AND JIM COMBS**<br><br>Date:  November 3, 2011<br>Time:  2:00 p.m.<br>Dept:  7<br>Hon. Morrison England |

## INTRODUCTION

Stated simply, plaintiffs claim via this motion that they are entitled to continuously and indefinitely occupy City parks. Their position is worth reemphasizing: plaintiffs claim the right to remain in any City park continuously and indefinitely, and thus argue that the City's reasonable time, place and manner restrictions for parks cannot stand.

In its application for a temporary restraining order (TRO), plaintiffs seek to prevent the City of Sacramento (City) from enforcing its long-established rules regarding the efficient operation of its park system. Specifically plaintiffs want to spend the night in Cesar Chavez Plaza (Chavez Plaza), and so seek a court order preventing the City from enforcing Sacramento City Code (SCC) section

1

12.72.090, which prohibits "remaining or loitering" in City parks between 11:00 p.m. and 5:00 a.m. on weeknights and 12:00 p.m. and 5:00 a.m. on weekends.  Notably, the City has a permit mechanism in place for seeking the authority to stay in the parks during those times, yet plaintiffs have failed completely to apply for such a permit.  The statement in the plaintiff's application that they have "used every means at [their] disposal to urge the City Manager and those controlling the levers of power in the City of Sacramento" to allow the 24 hour demonstration seems disingenuous when the plaintiffs have made no attempt to seek a permit for that activity.

Plaintiffs argue that a TRO is warranted because SCC section 12.72.090[1]: (1) Is an unreasonable time, place or manner restriction on speech activities; (2) Lacks adequate criteria for determining when exceptions to the time prohibition will be granted; and (3) Does not require the City to obtain permits to extend park hours for its own events.  (Motion for TRO at 5:7-17)

Although plaintiffs indicate an intent to challenge the subject ordinance both facially and "as applied" to them specifically, their motion for TRO fails completely to articulate how any request for the use of the park has been denied, or how they (or any other group) have been singled out for disparate treatment by the City in its application of SCC section 12.72.090.

Furthermore, and more importantly to the City and the citizens it serves, the complete lack of limits on the regulation of park use espoused by moving parties would leave the City of Sacramento with a *de facto* campground in the middle of downtown with little or no ability to prevent people from remaining there indefinitely.

## BACKGROUND

The City of Sacramento, as steward for the public, manages and maintains the City's parks and promulgates rules and regulations for the use of those parks.  The City's network of parks includes Chavez Plaza, which is located at 910 I Street.  Chavez Plaza is a small community park, only 2.5 acres in size, where approximately 8 picnic tables, a single restroom, a café, fountain, and

---

[1] For the court's convenience, all of the Sacramento City Code sections referenced in this opposition are attached, as a group, as Exhibit A to the Declaration of Brett M. Witter.

public art are located. The City has adopted various ordinances which regulate park use hours and generally prohibit all overnight camping activities in City parks and other places of public and private property throughout the City unless a City issued permit is first obtained. The City's permitting process is intended to protect the public's health, safety and welfare as well as protect the City's parks and public property from overuse and unsanitary conditions. (Declaration of Jim Combs; Staff Report from June 23, 1981, attached as Exhibit A to the Declaration of Wendy Klock-Johnson)

On October 6, 2011, a group calling itself "Occupy Sacramento," began to congregate in Chavez Plaza with the intent to show their support of the "Occupy Wall Street" demonstrations that began the previous month in New York City. Approximately 250 protestors arrived on October 6 and began setting up tents and shade structures in Chavez Plaza. Having been advised of their arrival, the Sacramento Police Department ("SPD") began a dialogue and established a rapport with several members of the group. Throughout the day on October 6, 2011, representatives of SPD advised the demonstrators that Chavez Plaza would close at 11:00 pm pursuant to SCC section 12.72.090 and that they would be required to vacate and remove their property at that time.

On the afternoon of October 6, 2011, plaintiff's counsel, Mark E. Merin, sought a TRO from Judge Lloyd Connelly of the Sacramento County Superior Court. (Request for Temporary Restraining Order, attached as Exhibit B to the Declaration of Brett M. Witter.) The relief sought in that application was essentially identical to that sought in the instant matter; to prevent the City from enforcing SCC section 12.72.090. *Id.* A hearing was held on the application, and Judge Connelly denied the request, making each of the following findings in support of the denial:

(1) That the moving party had failed to establish it would suffer irreparable harm if the temporary restraining order was not issued, as the demonstration could be held during normal park hours;

(2) That the moving party had not made reasonable efforts to seek a permit to use the park as they sought, despite the existence of such "remedies;" and

(3) That Judge Connelly had "reservations" regarding the moving party's ultimate likelihood of success on the merits.

(Order Denying TRO and Supplement, attached as Exhibit C to the declaration of Brett M. Witter)

Although the salient facts surrounding the "Occupy Sacramento" movement and the enforcement of the SCC have not materially changed since the date of the original application for TRO, the members of that group now make an identical request to this court. Despite the tacit instruction by Judge Connelly to seek a permit, no person affiliated with the Occupy Sacramento movement has yet applied for any type of park use permit. (Declaration of Jim Combs)

### RELEVANT SACRAMENTO CITY CODE SECTIONS

Plaintiffs accurately point out that SCC section 12.72.090, prohibits 'remaining or loitering' in City parks from 11:00 p.m. to 5:00 a.m. on weeknights and from 12:00 p.m. to 5:00 a.m. on weekends unless certain exceptions apply. Relevant here, section 12.72.090(B)(2) and (B)(3) also provide that these prohibitions do not apply to any person attending a meeting or other event sponsored by the Parks Department or to any person who is in the park consistent with a park use permit issued by the Parks Department. SCC section 12.72.090(C) provides that the Parks Director, with the concurrence of the Chief of Police, may extend park hours where such extension of hours is consistent with sound use of park resources, will enhance recreational activities in the city, and will not be detrimental to the public safety or welfare.

In the case of the Occupy Sacramento demonstrations, a park use permit would be required by SCC section 12.72.060, which provides that a permit is necessary for any assembly of more than fifty (50) people in a park which is "intended to or can reasonably be expected to last more than thirty (30) minutes."

Where a park use permit is required, the procedures and guidelines for the application process are outlined in SCC sections 12.72.160, 12.72.170 and 12.72.080. These sections of the city code lay out the procedures and timing for an application, the guidelines for consideration of a park use permit application and the grounds for denial of a permit application, procedures for "spontaneous" events, and an administrative appeal to the City Manager for the denial of any permit.

### ANALYSIS

A. <u>General Law and Procedure Regarding Temporary Restraining Orders</u>

In order to establish the propriety of a TRO, the moving party must establish: (1) That he is likely to succeed on the merits of the underlying complaint; (2) That he is likely to suffer irreparable

4

harm in the absence of the preliminary relief; that the balance of equities tips in his favor; and (3) That an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

**B.     The Temporary Restraining Order Should be Denied as it was Untimely Filed**

Plaintiffs have failed to comply with this Court's local rules:

> In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order. Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on that ground.

*Local Rule 231 (b)*. Here, the plaintiffs have failed to seek this preliminary relief in a timely fashion. Plaintiff's counsel sought a TRO from the Sacramento County Superior Court on October 6, 2011, on identical grounds as that articulated in the instant application. That application was denied by the Superior Court. (Exhibit C to declaration of Brett M. Witter) Inexplicably, plaintiffs have waited 26 days from the denial of that TRO application to bring this matter to the attention of this court. Even assuming that this Court would be inclined to disagree with Judge Connelly, it should deny this application because the delay in bringing this matter forward refutes any allegation that the plaintiffs will be "irreparably injured" without quick action by this Court. Clearly, these same parties and counsel knew of the Sacramento city code sections here at issue for at least 26 days, and during that window of time could have filed the instant complaint and pursued other avenues of relief. On that ground alone, this application for a TRO should be denied.

In addition, although Judge Connelly's order does not have a *res judicata* effect on this court in its consideration of the subject motion, the court should also refuse to allow the 'forum shopping' at work here, and deny entry of the requested order.

**C.     SCC Section 12.72.090 is a Reasonable Time, Place and Manner Restriction on Speech**

Although the state is circumscribed in its right to restrain expression in traditional public fora such as parks and sidewalks, it has been firmly established by the Supreme Court that even in a public forum the government may impose reasonable time, place and manner restrictions on speech activities, so long as the restrictions are content neutral, are narrowly tailored to serve a significant

governmental interest and they leave open ample alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

Important to the analysis here is that the constitutionality of any regulation is judged not in reference to the speech-related activities presented to the court, but rather on its more general application. *Clark, supra*, 468 U.S. at 296. In addition, "narrowly tailoring" the regulation to the aims of government does not require that the least restrictive means of achieving the government's goal be used, (*Ward, supra*, 491 U.S. at 798.) nor is the party seeking to engage in speech activities entitled to deliver its message in the precise manner he or she believes is the most effective. *Heffron v. Int'l Society for Krishna Consciousness*, 452 U.S. 640, 647 (1981).

**1. The City Code is Content Neutral**

The SCC section at issue is patently content neutral. The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of a disagreement with the message it conveys. *Ward, supra*, 491 U.S. at 791; *Clark, supra*, 468 U.S. at 295. Such regulations are also consistent with a finding of content neutrality if they are justified without reference to the content of the regulated speech. *Ward, supra*, 491 U.S. at 791. The fact that a regulation may impact some groups to a greater extent than others does not mean that the regulation is not content neutral. *Id.*

SCC section 12.72.090 does not make any reference to its prohibitions applying only to any particular type of speech or message. In fact, the prohibition against "remaining" in the park applies to all persons seeking to utilize the park, whether for activities relating to the expression of ideas or for simple recreational activities. This fact, too, establishes the content-neutral character of the section, as it applies to the "picnicker or soccer player" exactly as it does to the person desiring to engage in expressive conduct. *Thomas v. Chicago Park District*, 534 U.S. 316, 322 (2002). Moving parties make no reference in their motion indicating that they are aware of any content-based purpose behind this city code section or that it has ever been applied in a manner which discriminates based upon the content of any expressive conduct.

Based on the foregoing, and lacking any real argument to the contrary, the only reasonable

1  conclusion is that the section is content neutral.

**2. The City Code is Narrowly Tailored to a Significant Government Interest**

SCC section 12.72.090 is also narrowly tailored to serve a significant government interest. When the section was "reenacted" by the Sacramento City Council on June 23, 1981 as Sacramento City Code section 27.70, the staff report presented for the Council's consideration described the necessity and purposes behind replacing the preexisting SCC sections regarding park use. As it was presented to the Council the "new" park use regulations were adopted to "better accommodate use and to mitigate interference with the general public's enjoyment of park facilities and buildings. (Exhibit A to the declaration of Wendy Klock-Johnson) Notably, it was also at this time that the Sacramento City Council enacted then-section 27.50 (a), which required park use permits for groups of over 50 people utilizing park facilities. (*Id.*)

The Supreme Court has already held that ensuring the adequate maintenance and operation of a park system represents a substantial government interest. In *Clark v. Committee for Creative Non-Violence, supra,* the Court held that the government has a substantial interest in "maintaining…parks in an attractive and intact condition, readily available to the…people who wish to see and enjoy them by their presence." *Clark, supra*, 468 U.S. at 296. In that same opinion, the Court opined that there is also "a substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping, that are designed to limit the wear and tear on park properties." *Id.*

The use restrictions presented to the Court in *Clark* were directed at "camping" as opposed to "remaining" in the park. In responding to the plaintiffs' application for TRO, the City is operating under the assumption that plaintiffs intend only to "remain" in the park, and not to "camp" there. The Sacramento City Code has restrictions and permitting processes in place for "camping" in City parks, and none of those Code sections are at issue in this motion. However, if it is the intent of plaintiffs to "camp" in the park, then the holding in *Clark* is indistinguishable from the current matter, and this application for TRO should be denied on that basis. Even if plaintiffs only plan to "remain" in the park, the goals to be accomplished by the City Code and the Regulations of the US Park Service are remain the same: To ensure the ability of the general public to enjoy the park facilities and to ensure

7

the viability and maintenance of those facilities. (Declaration of Jim Combs) Although the constitutionality of prohibiting an 'around the clock' demonstration was not presented in *Clark*, the Court in *dicta* indicated its "serious doubt" that a prohibition like that at issue before the court today would violate the First Amendment, going so far as to say that the purposes of the camping restriction would be "more effectively" achieved by simply preventing 24 hour demonstrations entirely. *Clark, supra*, 468 U.S. at 296-297.

As indicated above, the validity of any regulation is judged not in reference to the speech-related activities presented to the court, but rather on its more general application. *Clark, supra*, 468 U.S. at 296. In that context it is appropriate, and in fact imperative, that the court consider the impact to the City if the requested injunctive relief is granted. In the absence of the City's ability to close its parks to use as described in SCC section 12.72.090, the plaintiffs here would not be the only group indicating a necessity to remain on park properties indefinitely. There will certainly be other groups that will demand to use the parks for speech-related activities, resulting in a *de facto* campground in the middle of downtown Sacramento. This is not an illusory fear of the "slippery slope;" rather the Supreme Court has expressly held that it is an appropriate consideration when evaluating whether a time, place and manner restriction on speech is narrowly tailored to a significant government interest. *Clark, supra*, 468 U.S. at 297.

**3. Section 12.72.090 Leaves Open Ample Alternatives for Expression**

Sacramento City Code section 12.72.090 also clearly leaves open adequate alternatives for those desiring to engage in speech activities to do so, and plaintiffs make no real effort in their application for TRO to argue otherwise.

SCC section 12.72.090 only prohibits the demonstrators' presence in the park for 6-7 hours per day. This leaves open the possibility of engaging in the desired demonstrations and other speech-related activities for the remaining 17-18 hours each day. Furthermore, the restriction applies only to the City's parks, and not to sidewalks or other areas that may be considered public fora. With these other avenues of reaching the public that may be out at the restricted hours, the City's regulation against remaining in a park for less than one-third of each day certainly leaves open adequate alternative methods for getting out the message.

Plaintiffs point out that they utilize the "after hours" time to reach out to other "occupy" demonstrations in different time zones. The code section at issue here does nothing to limit the demonstrator's ability to reach that audience. The use of social networking, using the internet to place both written and video communications online, and video conferencing are not inhibited because the parks are closed. Those types of activities remain available to the demonstrators, just not in the City parks.

### D. The City Code Contains Adequate Guidelines for City Staff to Appropriately Determine if Extensions of Park Hours are Warranted

Plaintiffs take the position that SCC section 12.72.090 also fails to pass constitutional muster because it fails to provide "meaningful limits" on the discretion of the Parks Director to determine when to extend park hours, and fails to provide an opportunity for judicial review. Plaintiffs mistakenly rely upon the Supreme Court's holding in *Thomas v. Chicago Park District*, 534 U.S. 316 (2002) as support for this position.

In *Thomas*, the Court upheld a park use permitting program established by the Chicago Park District. In so doing, it held that since the permitting process was "content neutral," it did not have to include all of the constitutional guarantees outlined in *Freedman v. Maryland*, 380 U.S. 51 (1965). Specifically, the permitting process did not have to include the heightened level of criteria for the exercise of discretion by the government, or the speedy judicial review that are referenced in the plaintiff's brief in support of this motion for temporary restraining order. *Thomas, supra*, 534 U.S. at 322-323.

Even content-neutral time, place and manner restrictions must have adequate standards to guide the official's decision as to whether to issue a permit and render it capable of judicial review. *Thomas, supra*, 534 U.S. at 323. SCC Section 12.72.090 (C) does include guidelines to the Chief of Police and Parks Director for determining whether it is appropriate to extend park hours. That subsection provides that an extension may be granted when it is determined that (1) The extension of hours is consistent with sound use of park resources; (2) The extension will enhance recreational activities within the city; and (3) The extension will not be detrimental to the public safety or welfare. *Id.* While these guidelines require more thought provoking analysis than some, they do not leave the

1 decision "to the whim of the administrator," but instead draw reasonable standards capable of
2 effective judicial review. *Thomas, supra*, 534 U.S. at 324.
3      In arguing that the permitting process provides inadequate levels of direction to the Parks
4 Director, plaintiffs also fail to take into account the permitting process of which they have yet to avail
5 themselves. SCC section 12.72.090 (B)(2) provides that the time prohibitions at issue here do not
6 apply to persons in a park for purposes which are authorized by a park use permit issued by the Parks
7 Director. The park use permitting process outlined at SCC sections 12.72.160 through 12.72.180
8 (Exhibit A to the declaration of Brett M. Witter) describe the procedures for obtaining a park use
9 permit, the information that must be provided with any park use permit application, the grounds for
10 denial of a park use application, the City's policy regarding the waiver of application times for
11 spontaneous events, and a process by which a denial can be appealed to the City Manager. The
12 grounds for denial of the application are consistent in almost all respects with the permitting program
13 outlined in *Thomas v. Chicago Parks District*, and provide similar procedural safeguards.
14      Based on the foregoing, the Court should not grant the TRO based upon the plaintiffs' position
15 that the guidelines for granting an extension of park hours lack the specificity to withstand
16 constitutional scrutiny.

17 **E.    The First Amendment does not Require the City to Permit its own Events**

18      Plaintiffs argue the City's decision to exempt itself from its own permitting requirements
19 somehow offends the First Amendment because a "possibility" exists that the City may utilize the
20 public forum to espouse one viewpoint to the exclusion others. Admittedly, Plaintiffs do little more
21 than infer this "possibility" may render SCC § 12.72.090 constitutionally invalid because it
22 potentially may sanction "viewpoint discrimination."
23      In *Rust v. Sullivan*, 500 U.S. 173 (1991), the petitioners challenged the validity of Section
24 1008 of the Public Health Service Act, which specified that none of the federal funds appropriated
25 under the Act for family-planning services could be used in programs where abortion was a method of
26 family planning. Similar to the instant matter, the petitioners in *Rust* sought an injunction to prevent
27 the government's implementation of the Act. The government contended the Act was a constitutional
28 form of "government speech" and the lower District Court granted the government's motion for

summary judgment which was affirmed by the Second Circuit Court of Appeal and the Supreme Court. In affirming the opinion from the Second District, the Supreme Court held:

> The government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other. 'A legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right.'

*Rust, supra*, 500 U.S. at 192-193 (quoting *Regan v. Taxation with Representation*, 461 U.S. 540, 549 (1983), and citing *Buckley v. Valeo*, 424 U.S. 1 (1976); and *Cammarano v. United States*, 358 U.S. 498 (1959)).)

Similarly, in *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), a religious group challenged a city's denial of their application to erect a monument in a park that already contained other overtly religious monuments including a Ten Commandments monument. In support of their denial, the city explained that it limited park monuments to those either directly related to the city's history or donated by groups with longstanding community ties. The religious group thereafter filed suit, claiming that the city officials had violated the First Amendment's Free Speech Clause by accepting the Ten Commandments monument but rejecting respondent's proposed monument. The District Court denied the group's preliminary injunction request, but the Tenth Circuit reversed and held the city was required to erect the group's monument because the park was a traditional public forum and the Ten Commandments monument was "private" as opposed to "government" speech. *Summum, supra*, 555 U.S. at 466.

The Supreme Court reversed the Tenth Circuit and declared the placement of a permanent monument in a public park is a form of "government speech" which is not subject to scrutiny under the Free Speech Clause because the Clause restricts government regulation of "private speech" not "government speech." *Summum, supra*, 555 U.S. at 467. The Court declared the city's decision to accept certain donated monuments while rejecting others is a form of government speech that is not subject to analysis under the Free Speech Clause. *Id.* at 478-481.

On these same grounds, this court should reject the plaintiffs' argument that the possibility of the City engaging in speech activities results in a conclusion that the ordinance is unconstitutional.

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

**CONCLUSION**

Based on all of the foregoing, Defendants respectfully maintain that the plaintiffs' motion does not support the drastic remedy of a temporary restraining order. While plaintiffs assert they are challenging the subject ordinance both facially and "as applied," they make no argument that the ordinance was applied in a discriminatory fashion to them, and so this application amounts only to a facial challenge to the ordinance. On that ground, SCC section 12.72.090 easily passes constitutional muster. This section of the City Code has far broader application than as a restriction on speech, and so has only and incidental impact on speech-related activities. The section is clearly content-neutral, as it does not favor one message or type of message over another, and in fact applies to all activities in the park, not just speech-related events. The ordinance is narrowly tailored to achieve the City's substantial interest in the efficient maintenance and operation of Cesar Chavez Plaza and the park system in general, and leaves open ample opportunities for those desiring to participate in the "Occupy Sacramento" movement to express their ideas. As a reasonable time, place and manner restriction on the use of public property, it is not unconstitutional even though it may adversely impact speech-related activities.

The City of Sacramento has a broad responsibility to its citizens to effectively and efficiently operate the parks system. In an effort to provide parks that are adequately maintained and kept open to use by all who wish to do so, certain regulations are constitutionally acceptable. What the plaintiffs seek to do here is obtain an order which they believe will allow them to "occupy" Cesar Chavez Plaza. However, the concept of "occupying" the park really amounts to the demonstrators living in the park by converting it into a campground for their expressive conduct as long as they feel it is necessary to get their message across to those who will listen. The Constitution does not require that the City allow such conduct in order to comply with the restrictions of the First Amendment, and so this court should not issue the requested order.

///
///
///
///

| | | |
|---|---|---|
| DATED: November 2, 2011 | | EILEEN M. TEICHERT,<br>City Attorney |
| | By: | /S/ BRETT M. WITTER<br>**BRETT M. WITTER**<br>Supervising Deputy City Attorney<br>Attorneys for Defendants<br>CITY OF SACRAMENTO, JOHN F. SHIREY<br>and JIM COMBS |

OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER