Mark E. Merin (State Bar No. 043849)
Cathleen A. Williams (State Bar No. 068029)
**LAW OFFICE OF MARK E. MERIN**
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:      (916) 443-6911
Facsimile:      (916) 447-8336
E-Mail:         mark@markmerin.com
                cathleen@markmerin.com

Jay-Allen Eisen (State Bar No. 042788)
**JAY-ALLEN EISEN LAW CORPORATION**
2431 Capitol Avenue
Sacramento, California 95816
Telephone:      (916) 444-6171
Facsimile:      (916) 441-5810
E-Mail:         jay@eisenlegal.com

Robert A. Buccola (State Bar No. 112880)
**DREYER BABICH BUCCOLA WOOD LLP**
20 Bicentennial Circle
Sacramento, California 95826
Telephone:      (916) 379-3500
Facsimile:      (916) 379-3599
E-Mail:         rbuccola@dbbwlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCCUPY SACRAMENTO, an unincorporated association; CHRISTINA PLUMB, DAVID WITKIN, SEAN C. LANEY, TURQUOISE THOMAS, SCOTT CONROY, and JOEL USSERY,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CITY OF SACRAMENTO; JOHN F. SHIREY, Sacramento City Manger, in his official capacity; JIM COMBS, Sacramento City Director of Parks and Recreation, in his official capacity,<br><br>                    Defendants. | Case No. 2:11-cv-02873-MCE-GGH<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

# I.   INTRODUCTION

In addition to arguing that the request for a Temporary Restrain Order is untimely, Defendants support their decision to prevent Occupy Sacramento and its participants, including named Plaintiffs herein, from remaining in Cesar Chavez Park past those hours stated in challenged Sacramento City Code § 12.72.090 on the ground that the ordinance is a "reasonable time, place, and manner restriction" and includes "adequate guidelines" for city staff to decide when "extensions of park hours are warranted." (Defendants' Brief, page 9.)

They also appear to argue that Plaintiffs should have, but did not apply for a permit. However, they cannot deny that from the city code sections they provided the need for a permit is not apparent. More significantly, however, under applicable Ninth Circuit law, a requirement that a group of demonstrators of less than 75 obtain a permit for First Amendment activity is likely not constitutional. *Long Beach Area Peace Network, et al. v. City of Long Beach*, 574 F.3d 1011 (9th Cir., 2009)[1]

Moreover, they do not explain that while "demonstrations, protests and rallies are allowed without a Special Event Permit on public property. . ." under conditions set out in Defendants' Event Planning Guide (attached as Exhibit "A" to the Merin Declaration filed in support of the Motion for Temporary Restraining Order, Doc. 3-3) which Plaintiffs clearly meet, Plaintiffs are nonetheless required to vacate Cesar Chavez Park at night whereas persons and organizations favored or "co-sponsored" by the Defendant Director of the City's Parks and Recreation Department may ignore those restrictions.

It is this absolute and unbridled discretion which exposes Defendants' "time, place, and manner argument" as disingenuous, and makes the park hours ordinance in question unconstitutional.

---

[1] "Advance notice and permitting requirements applicable to smaller groups [less than 75] would likely be unconstitutional, unless such uses implicated other significant governmental interests, or where the public space in question was so small that even a relatively small number of people could pose a problem of regulating competing uses." (supra, at 1034)

1

## II.   ARGUMENT

...

### A.   The Application for a Temporary Restraining Order is Timely

Toward the end of the day on the first day of the Occupy Sacramento activities, when it because apparent that some participants wished to remain in Cesar Chavez Park past park closure hours, counsel for some of the Plaintiffs attempted to contact the City Manager and the Police Chief to request them to exercise their discretion under various, potentially applicable city ordinances, to permit some of the Occupy Sacramento participants to remain in the park overnight. Unable to reach either decision maker, said counsel sought intervention from the night court judge who requested that something be put into writing and provided to a representative from the City Counsel's office and that both counsel could then speak to him about the issue. (See Declaration of Mark E. Merin, attached hereto as Exhibit 1.)

Counsel prepared the document attached as Exhibit B to Defendants' Counsel's declaration (Document 11), and e-mailed it to Defendants' counsel, but the document was never filed. The arguments to the Court were focused on Plaintiffs' counsel's desire to have contact with the decision makers so as to give them time to exercise their discretion before police enforced the ordinance from which those Defendants had the power and authority to grant waivers or exemptions. The court, without the benefit of any authorities, and strictly based on supposition, refused the oral request and wrote or signed the orders also attached to Defendant's Opposition as Exhibit C to the Witter Declaration (Dopcument 12.)

Thereafter, as set out in the Plaintiffs' complaint and memorandum of points and authorities, members of Occupy Sacramento and Plaintiffs sought to obtain permission from the City Manager, the City Attorney, and the entire City Council, to remain overnight in Cesar Chavez Park. Only when those efforts – appeal to the responsible City officials and the City's governing body – proved futile, did Plaintiffs seek federal court intervention in the form of this Request for a Temporary Restraining Order. Certainly, Plaintiffs should not be faulted for exhausting the political and conventional avenues they thought were available to them, before filing in federal court. Under normal circumstances, litigants would be encouraged to pursue these avenues, first, and not taunted with the accusation that they were

2

too slow to get the matter into court.

In any event, the dispute is not stale by a long shot, but becomes increasingly fraught with every day that passes.

...

**B.      The Defendants do Not Have Reasonable Time, Place and Manner Restrictions on Park Use**

Defendants do not have "reasonable time, place, and manner restrictions" on park use.  They appear to have a prohibition on use of Cesar Chavez Park after hours stated in 12.72.090, with no justification stated for such a restriction, and no evidence or findings to support the need for such a limitation.  Yet the Defendants permit "after hours" park use for events sponsored or co-sponsored by Defendant Director of Parks and Recreation, with no restriction or limitation imposed on his absolute discretion to permit or to deny after hour park use.

The Defendants argue that after hours park use sponsored or co-sponsored by the Director is the same as the decisions of a legislative body to, for instance, erect a statue in a park or engage in "government speech."  Of course, the case cited, *Pleasant Grove City v. Summum* 555 U.S. 460 (2009) by its terms does not apply to cases involving protected speech under the First Amendment. Moreover, the director is not legislating when he "sponsors or co-sponsors" after hours park use.  He is merely exercising his own personal discretion without any limitations, whatsoever.  When he "sponsors or co-sponsors" an event, a gathering, or a meeting, it is his speech, not the City's speech. The point is not that the government is entitled to selectively fund programs believed to be in the public interest: the point is that his discretion to favor or disfavor, to sponsor or to decline to sponsor, does not meet the strict standards applied to "time, place, or manner" restrictions, namely, that they be "narrowly tailored" to serve a substantial government interest without restricting substantially more speech than necessary.

**C.      The City Code Does Not Contain Constitutionally Adequate Guidelines For Denial Of A Permit For An Extension Of Park Hours**

The City has the burden of showing that a restriction on speech is narrowly tailored to serve a substantial governmental interest. *Long Beach Area Peace Network v. City of Long Beach* 574 F.3d 1011, 1036 (9th Cir 2009). The City argues its permitting scheme meets constitutional muster because it has the required "adequate standards" to guide the officials discretion as to whether to issue a permit for

3

extension of park hours, noting that there are three criteria for granting such an extension: (1) The

extension is consistent with sound use of park resources; (2) The extension will enhance recreational

activities within the city; and (3) The extension will not be detrimental to the public safety and welfare.

Plaintiffs submit that these criteria are vague, overbroad, and implicitly disfavor expressive

activity. What is "sound use" of park resources? Why is enhancement of "recreational activities" given a

favored position, in light of the historic importance of parks to First Amendment activity? And even

more significant, what does it mean to be "detrimental" to public "welfare" in this context?

The City maintains that this scheme is comparable to Chicago's permitting process. There, a

permit could be denied because of such considerations as falsehoods in the application, prior damage to

the park, prior violations of permit requirements, or an unreasonable danger to health and safety. Thomas

v. Chicago Park District 534 U.S. 316, 324. These provisions are in fact far more specific; "health and

safety" in particular is confined to physical risk such as traffic and crowd control, whereas "welfare"

might mean simply "good fortune, happiness, well-being, or prosperity," as defined in Webster's

Collegiate Dictionary.

In *Long Beach Area Peace Network v. City of Long Beach* 574 F.3d 1011, 1034-1034, the Ninth

Circuit struck down a scheme which required a permit whenever the event "may require the provision of

any public services." The court held "public services" was a vague term, not narrowly tailored to serve a

substantial government interest. The same is true here, with reference to "sound use," and "public

welfare."

## III.  CONCLUSION

For the foregoing reason, as well as those previously urged, the contested ordinance is

unconstitutional, and the Defendants should be enjoined from enforcing it.

DATED: November 2, 2011                      Respectfully Submitted,

4

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**
*Occupy Sacramento, et al. vs. City of Sacramento, et al.*; United States District Court, Eastern District of California, Case No. 2:11-cv-02873-MCE-GGH

1

2
      /s/ "Mark E. Merin"
By:_____
3
      Mark E. Merin (State Bar No. 043849)
      Cathleen A. Williams (State Bar No. 06829)
4
      **LAW OFFICE OF MARK E. MERIN**
      1010 F Street, Suite 300
5
      Sacramento, California 95814
      Telephone:      (916) 443-6911
6
      Facsimile:       (916) 447-8336

7
      Jay-Allen Eisen (State Bar No. 042788)
      **JAY-ALLEN EISEN LAW CORPORATION**
8
      2431 Capitol Avenue
      Sacramento, California 95816
9
      Telephone:      (916) 444-6171
      Facsimile:       (916) 441-5810
10

11
      Robert A. Buccola (State Bar No. 112880)
      **DREYER BABICH BUCCOLA WOOD LLP**
      20 Bicentennial Circle
12
      Sacramento, California 95826
      Telephone:      (916) 379-3500
13
      Facsimile:       (916) 379-3599

14
      Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

1  Mark E. Merin (State Bar No. 043849)
   Cathleen A. Williams (State Bar No. 068029)
2  **LAW OFFICE OF MARK E. MERIN**
   1010 F Street, Suite 300
3  Sacramento, California 95814
   Telephone:     (916) 443-6911
4  Facsimile:      (916) 447-8336
   E-Mail:          mark@markmerin.com
5                       cathleen@markmerin.com

6  Jay-Allen Eisen (State Bar No. 042788)
   **JAY-ALLEN EISEN LAW CORPORATION**
7  2431 Capitol Avenue
   Sacramento, California 95816
8  Telephone:     (916) 444-6171
   Facsimile:      (916) 441-5810
9  E-Mail:          jay@eisenlegal.com

10 Robert A. Buccola (State Bar No. 112880)
   **DREYER BABICH BUCCOLA WOOD LLP**
11 20 Bicentennial Circle
   Sacramento, California 95826
12 Telephone:     (916) 379-3500
   Facsimile:      (916) 379-3599
13 E-Mail:          rbuccola@dbbwlaw.com

14 Attorneys for Plaintiffs

15                 UNITED STATES DISTRICT COURT

16              EASTERN DISTRICT OF CALIFORNIA

17

18 OCCUPY SACRAMENTO, an unincorporated          Case No. 2:11-cv-02873-MCE-GGH
   association; CHRISTINA PLUMB, DAVID
19 WITKIN, SEAN C. LANEY, TURQUOISE              **DECLARATION OF MARK E. MERIN IN**
   THOMAS, SCOTT CONROY, and JOEL               **SUPPORT OF PLAINTIFFS' REPLY TO**
20 USSERY,                                       **DEFENDANTS' OPPOSITION TO**
                                                 **PLAINTIFFS' MOTION FOR**
21                 Plaintiffs,                   **TEMPORARY RESTRAINING ORDER**

22        vs.

23 CITY OF SACRAMENTO; JOHN F. SHIREY,
   Sacramento City Manger, in his official capacity;
24 JIM COMBS, Sacramento City Director of Parks
   and Recreation, in his official capacity,

25                 Defendants.

26

27        I, MARK E. MERIN, do declare and say:

28        1.    I am an attorney licensed to practice in the State of California and represent Plaintiffs

---

herein.

2.      Toward the end of the day on the first day of the Occupy Sacramento activities in Cesar Chavez Park, when it became apparent that some participants wished to remain in the park past park closure hours, I attempted to contact the City Manager and the Police Chief to request them to exercise their discretion which they appeared to have under various, potentially applicable city ordinances, to permit some of the Occupy Sacramento participants to remain in the park overnight.

3.      I was unable to reach either decision maker so I sought intervention from the night court judge who requested that something be put into writing and provided to a representative from the City Attorney's Office, and thereafter he would speak with both me and a representative from that office. I quickly put together the document which Mr. Witter has attached to his declaration, e-mailed it to him, and after 7:00 pm had a conference call with Judge Connelly. I made the arguments that neither of the decision makers which had discretion to permit participants in Occupy Sacramento to remain in the park after hours had had an opportunity to consider the matter, and I requested that he enjoin the City Police from enforcing any ordinances which might prevent Occupy Sacramento participants from remaining overnight in the park.

4. Judge Connelly refused to issue a TRO and Mr. Witter prepared an order which he attached to his declaration, together with the "supplemental" which Judge Connelly authored. Nothing was ever filed by Occupy Sacramento or Plaintiffs herein in state court.


I declare, under penalty of perjury, that the above is true and correct and that this declaration was executed this 2nd day of November, in Sacramento, CA.


/s/ "Mark E. Merin