UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


OCCUPY SACRAMENTO, et al.,              No. 2:11-cv-02873-MCE-GGH

      Plaintiffs,

  v.                                    <u>MEMORANDUM AND ORDER</u>

CITY OF SACRAMENTO, et al.,

      Defendants.


----oo0oo----

    Before the Court is Defendant City of Sacramento's (the "City") Motion to Dismiss and Strike Plaintiffs' First Amended Complaint (ECF No. 23) ("MTD").[1]  For the reasons that follow, the Motion is GRANTED without leave to amend.

/// 

/// 

/// 

/// 

---

    [1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

1

**BACKGROUND**[2]

2

3      Plaintiffs "Occupy Sacramento" – which is an unincorporated
4  association aligned with the "Occupy Wall Street" movement – as
5  well as individual members of Occupy Sacramento, allege that
6  since the first week of October 2011 they have been assembling
7  and associating in Sacramento's Cesar Chavez Plaza Park ("the
8  Park") for the purpose of engaging in political expression.[3]
9  (First Amended Complaint ("FAC"), ECF No. 9 ¶¶ 3, 4, 6-9.)
10 Plaintiffs state that they have chosen to assemble in the Park
11 because "it is central to public transportation, symbolically
12 located opposite City Hall and because it is the historic site
13 for peaceable assemblies and free speech."  (Id. at ¶ 9.)  They
14 desire to assemble and to communicate on a continuous basis,
15 around the clock on a twenty-four hour a day basis for an
16 indefinite period of time.  (Id. at ¶ 10.)  Specifically,
17 Plaintiffs argue that a continuous presence in the Park is
18 necessary both to communicate their message to people in the
19 local area, as well as to communicate with other "Occupy" groups
20 across the country and around the world.  (Id. at ¶¶ 9-10.)
21 ///
22 ///

23 ───────────────

24      [2] Except as otherwise noted, the following facts are taken
     from Plaintiff's FAC (ECF No. 9.)  Page references to documents
25   filed in this case will be to the Court's ECF pagination.  For
     the purposes of this Motion, the Court accepts Plaintiff's facts
26   as true and makes all inferences in the light most favorable to
     Plaintiff.

27      [3] Cesar Chavez Plaza Park is a community park, approximately
     2.5 acres in size, in downtown Sacramento located across the
28   street from City Hall.

Plaintiffs contend that Sacramento City Code § 12.72.090 prohibits themselves and others from remaining in the Park after 11:00 p.m. and before 5:00 a.m. each weekday, and after midnight and before 5:00 a.m. on weekends.  (Id. at ¶ 11.)  They reproduce § 12.72.090 in full, which provides:

**12.72.090 Remaining or loitering in parks during certain hours prohibited.**

A.   No person shall remain or loiter in any public park:

1.   Between the hours of midnight Friday or Saturday and five a.m. of the following day; and

2.   Between the hours of eleven p.m. Sunday through Thursday and five a.m. of the following day.

B.   The prohibitions contained in subsections (A)(1) and (A)(2) of this section shall not apply:

1.   To any person on an emergency errand;

2.   To any person attending a meeting, entertainment event, recreation activity, dance or similar activity in such park provided such activity is sponsored or co-sponsored by the department of parks and community services or a permit therefor has been issued by the department of parks and community services;

3.   To any person exiting such park immediately after the conclusion of any activity set forth in subsection (B)(2) of this section;

4.   To any peace officer or employee of the city while engaged in the performance of his or her duties.

C.   The director, with the concurrence of the chief of police, may designate extended park hours for any park when the director determines that such extension of hours is consistent with sound use of park resources, will enhance recreational activities in the city, and will not be detrimental to the public safety or welfare.

3

1
2
3

The prohibitions contained in subsections
(A)(1) and (A)(2) of this section shall not
apply to any person present in a public park
during extended park hours designated
pursuant to this subsection.

4
5
6
7
8
9
10
11

D.    The chief of police, with the concurrence of
the director of parks and community services,
may order any park closed between sunset and
sunrise when he or she determines that
activities constituting a threat to public
safety or welfare have occurred or are
occurring in the park and that such closing
is necessary to protect the public safety or
welfare.  At least one sign designating the
sunset to sunrise closing shall be installed
prominently in the park.  When a park is
ordered closed between sunset and sunrise, it
is unlawful for any person to remain or
loiter in said park during said period.
(Prior code § 27.04.070).

12   (Id.)

13          Plaintiffs state that on October 7, 2011, shortly after

14   11:00 p.m., and on succeeding nights up to and including the date

15   the FAC was filed, members of the City's Police Department

16   ordered Plaintiffs and others out of the Park at the closing

17   times designated in § 12.72.090.  (Id. at ¶¶ 11, 12.)  Plaintiffs

18   contend that any Occupy Sacramento members who remained were

19   arrested pursuant to § 12.72.090.  (Id. at ¶ 12.)  They contend

20   that as a result of the City's enforcement of § 12.72.090, their

21   "peaceable assembly was disrupted and Plaintiffs are afraid to

22   exercise their constitutional rights to peaceably assemble, to

23   engage in constitutionally protected activity, to engage in

24   political speech, to petition the government for redress of

25   grievances, to freely associate with other likeminded citizens in

26   Cesar Chavez Park" after the hours set forth in  § 12.72.090.

27   (Id. at ¶ 12.)

28   ///

4

1  Specifically, they contend they are afraid their liberty will be

2  arrested if they remain the Park after hours.  (<u>Id.</u> at ¶ 13.)

3      Plaintiffs also assert that "the City routinely sponsors

4  and/or co-sponsors events which are held after the hours

5  specified in city code section 12.72.090, and there are no

6  standards by which determinations are made and discretion is

7  exercised as to which events are permitted to be held after such

8  hours."  (<u>Id.</u> at ¶ 12.)  Further, they contend that "Occupy

9  Sacramento, through its counsel, has requested permission from

10 Defendants to remain in Cesar Chavez Park after park hours but

11 Defendants have failed and refused to grant such permission."

12 (<u>Id.</u>)

13     On October 6, 2011, Plaintiffs' counsel, Mark Merin, first

14 sought a temporary restraining order ("TRO") from the Sacramento

15 County Superior Court that would prevent the City from enforcing

16 the City Code "as it pertains to illegal camping (Sacramento City

17 Code Chapter 12.52) and loitering in parks between the hours of

18 11:00 p.m. and 5:00 a.m. (Sacramento City Code Section

19 12.72.090)."  (Request for Judicial Notice, ECF No. 23, Ex. A

20 (Oct. 7, 2011, Superior Court Order) at 5.)[4]

21

22     [4] Pursuant to Federal Rules of Evidence 201(b) (authorizing
   judicial notice of adjudicative facts "capable of accurate and
23 ready determination by resort to sources whose accuracy cannot be
   reasonably questioned"), Defendants request the Court take
24 judicial notice of several documents.  (Request for Judicial
   Notice ("RJN") (ECF No. 23, Exs. A-C.)  Specifically, Defendants
25 ask the Court to take judicial notice of: (1) The Sacramento
   Superior Court's October 7 and 12, 2011, Orders (Ex. A); (2) this
26 Court's November 4, 2011 Order (Ex. B) (<u>see</u> <u>also</u> ECF No. 17); and
   (3) a June 23, 1981, Sacramento City Council Staff Report
27 (Ex. C).  Defendants' requests are unopposed and are the proper
   subject of judicial notice.  <u>See</u>, <u>e.g.</u>, <u>Champlaie v. BAC Home</u>
28                                        (continued...)

Following oral argument, which occurred at 8:30 p.m. on October 6, the Superior Court concluded that the petitioner had failed to establish that it would suffer irreparable harm absent the TRO, "as the demonstration could be held during normal park hours" and the court doubted whether petitioner could succeed on the merits. (Id. at 5-6; Ex. B at 9.)  Furthermore, the Superior Court held that the petitioner had not reasonably attempted to apply for a permit to use the park until October 6, and therefore failed to exhaust administrative remedies. (Id.; RJN Ex. B at 9.)

On November 1, 2011, Plaintiffs filed this action, seeking declaratory judgment, a TRO, preliminary and permanent injunctive relief, as well as damages and attorneys' fees. (See ECF No. 1 (original complaint)).  The Court issued an abbreviated briefing schedule with the TRO hearing scheduled for November 3. (See ECF No. 8.)  The parties timely filed their Opposition and Reply and, on November 2, Plaintiffs filed their FAC. (ECF No. 9.)

On Thursday, November 3, the Court held a hearing on Plaintiffs' Motion for TRO. (See November 4, 2011, Order, ECF No. 17).  At the hearing, the Court orally denied the TRO motion, stating that a written order would follow. (Id. at 6.)  On November 4, 2011, the Court issued its written Order.

///

///

---

[4](...continued)
Loans Servicing, LP, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record). Accordingly, Defendants' Request for Judicial Notice, (ECF No. 23), is granted.

1    In its Order, the Court noted that, at the TRO hearing,

2 counsel for the parties had advised the Court that, earlier in

3 the day on November 3, Plaintiffs had, apparently for the first

4 time (despite the language in the Superior Court's Order

5 suggesting otherwise), filed an application for an overnight use

6 permit for the Park with the Department of Parks and Recreation

7 and that the Parks Director had promised to review the

8 application on an expedited basis and promised a decision by

9 Monday, November 7.[5]  (Id.)  Despite this, Counsel had decided to

10 proceed with the hearing.  (Id.)

11    Turning to the parties' arguments regarding Plaintiffs'

12 request for a TRO, The Court first determined that (1) denial of

13 the TRO was warranted on the procedural ground that although the

14 Superior Court had denied Plaintiffs' counsel's petition for a

15 TRO on October 7, 2011 (see RJN Exs. A and B), Plaintiffs did not

16 file their action in this Court until November 1, 2011, some

17 twenty-five days later. (Order, ECF No 17 at 7-8.)  The Court

18 concluded that this constituted undue delay, as Plaintiffs could

19 have sought injunctive relief in the interim.  (Id. at 8-9.)

20 Furthermore, the Court found that Plaintiffs had not demonstrated

21 that they were pursuing their rights with City or state officials

22 (e.g., seeking the aforementioned overnight use permit) in the

23 interim.  (Id.)

24 _____

25    [5] It does not appear in their filings related to the Motion
to Dismiss that the Parties have stated what the Parks Director's
26 ultimate decision was as to the application for a parks use
permit, however, it appears the Parks Director ultimately denied
27 the application.  See http://www.sacramentopress.com/headline/59847/
Occupy_Sacramento_movement_expands_to_City_Hall_grounds (last
28 visited July 3, 2012).

In addition, the Court found that Plaintiffs were not attempting to maintain the status quo, but to change it.  (Id. at 10-12.) Specifically, the Court concluded that the status quo was the City's practice of enforcing of the Park hours pursuant to the approximately thirty year-old City Code § 12.72.090, whereas what Plaintiffs sought was to change the status quo in such a manner that the City would no longer enforce the statute.  (Id. at 10-12.)

As to the substantive merits of Plaintiffs' claims, for the purpose of determining whether a TRO was warranted, the Court first noted that Plaintiffs had to meet the burdens of either Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008) (party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest") or Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).  (Id. at 7, 12-13.)  The Court then analyzed Plaintiffs' First Amendment claims and determined that, for the purposes of the TRO under both the Winter or Cottrell standards, § 12.72.090 appeared to be a facially valid content-neutral time, place and manner restriction and that § 12.72.090 did not give the Director of the City parks unlimited discretionary authority, as Plaintiffs' contended.  (Id. at 13-24.)
///

8

Thus, the Court concluded that no TRO was warranted as there did not appear to be a likelihood that Plaintiffs could succeed on either their facial or as applied challenges to § 12.72.090. (Id. at 24.)

Thereafter, on November 22, 2011, Plaintiffs withdrew their motion for a preliminary injunction (see ECF Nos. 18 and 19). Plaintiffs did not thereafter seek leave to amend their complaint.

On April 16, 2012, Defendants filed their Motion to Dismiss and Motion to Strike (ECF No. 23). In their Motion, Defendants generally argue that dismissal of Plaintiffs first three causes of action is warranted because § 12.72.090 is a facially valid reasonable time, place and manner restriction on speech, and it imposes constitutionally sufficient limitations on the Parks Director's authority to issue park use permits. (Id. at 4-9.) In addition, Defendants contend that, to the extent Plaintiffs are raising an "as applied" challenge, they have failed to sufficiently allege facts to support this claim. (Id. at 9-10.) Defendants also contend that Plaintiffs have failed to sufficiently allege a custom, practice or policy, for which the "official capacity" Defendants could be held liable. (Id. at 10-11).

Defendants also argue that Plaintiffs cannot maintain their fourth cause of action, a "Bane Act" claim for money damages, as Plaintiffs have not made a claim to the City and had that claim rejected. (Id. at 11.)

///

///

9

Further, they allege the claims against the individual Defendants, John Shirley and Jim Combs, should be dismissed as redundant of the "official capacity" claims against the City. (Id. at 13-15.)  Finally, as an alternative argument, Defendants move to strike any references to Plaintiffs' facial attack on § 12.72.090 on the basis that it is a valid time, place and manner restriction.  (Id. at 14.)

## STANDARD FOR 12(b)(6) MOTION TO DISMISS

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal citations and quotations omitted).  Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555 (internal citations and quotations omitted).  A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level.

1  Id. (citing 5 C. Wright & A. Miller, Federal Practice and

2  Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must

3  contain something more. . . than . . . a statement of facts that

4  merely creates a suspicion [of] a legally cognizable right of

5  action")).

6      Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather

7  than a blanket assertion of entitlement to relief.  Without some

8  factual allegation in the complaint, it is hard to see how a

9  claimant could satisfy the requirements of providing not only

10  'fair notice' of the nature of the claim, but also 'grounds' on

11  which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal

12  citations omitted).  A pleading must contain "only enough facts

13  to state a claim to relief that is plausible on its face." Id.

14  at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009).

15  If the "plaintiffs .  . . have not nudged their claims across the

16  line from conceivable to plausible, their complaint must be

17  dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.

18      A court granting a motion to dismiss a complaint must then

19  decide whether to grant leave to amend.  Rule 15(a) empowers the

20  court to freely grant leave to amend when there is no "undue

21  delay, bad faith[,] dilatory motive on the part of the movant,

22  . . . undue prejudice to the opposing party by virtue of . . .

23  the amendment, [or] futility of the amendment. . . ." Foman v.

24  Davis, 371 U.S. 178, 182 (1962).  Leave to amend is generally

25  denied when it is clear the deficiencies of the complaint cannot

26  be cured by amendment.

27  ///

28  ///

11

1  <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir.

2  1992); <u>Balistieri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699

3  (9th Cir. 1990) ("A complaint should not be dismissed under Rule

4  12(b)(6) unless it appears beyond doubt that the plaintiff can

5  prove no set of facts in support of his claim which would entitle

6  him to relief.") (internal citations omitted).

7

8                              **ANALYSIS**

9

10     **A.    Counts 1-3: Alleging that City Code § 12.72.090 is
              Unconstitutional on its Face and as Applied**

11

12              **1.    Parties' Contentions**

13

14     In Count One of their FAC, which seeks declaratory relief,

15  Plaintiffs allege that § 12.72.090 is unconstitutional on its

16  face and as applied under the First and Fourteenth Amendment on

17  the basis that:

18          a. the law operates as an unconstitutional prior
             restraint on constitutionally protected expression;
19
            b. the law abridges the right to freedom of speech and
20           expression protected by the First Amendment;

21          c. the law abridges the right to freedom of assembly
             protected by the First Amendment;
22
            d. the law abridges the right to petition the
23           government for redress of grievances protected by the
             First Amendment;
24
            e. the law confers standardless discretion on city
25           officials to grant or deny permission to remain in
             Cesar Chavez Park after the hours stated in Sacramento
26           City Code § 12.72.090;

27          f. the law is impermissibly overbroad;

28          g. the law is unconstitutionally vague;

                                12

h. the law deprives Plaintiffs of equal protection of the laws;

i. the law deprives Plaintiffs of their right to due process by imposing strict liability for engaging in innocent conduct;

j. the law is underinclusive;

k. the law is selectively and discriminatorily applied;

l. the law is overinclusive; and

m. the law operates to chill protected speech.

(FAC at 7.)   In Count Two, Plaintiffs assert that Defendants' conduct has deprived and threatens to deprive Plaintiffs of their rights secured by the First and Fourteenth Amendments, and has caused and will cause irreparable harm to Plaintiffs for which there is no adequate remedy of law, thereby entitling them to a permanent injunction which precludes the City from enforcing § 12.72.090.   (Id. at 8.)   In Count 3, Plaintiffs contend that, as a result of the City's alleged violations of the First and Fourteenth Amendments, Plaintiffs are entitled to compensatory damages.

Defendants move to dismiss the first three counts of Plaintiffs' complaint on the basis that § 12.72.090 is a facially valid time, place and manner restriction on speech.  (MTD at 4-9.)  They contend that § 12.72.090 is content-neutral, narrowly-tailored to a significant government interest that leaves open adequate alternatives for Plaintiffs expression and limits the Parks Director's discretion.  (Id.)  They also contend that Plaintiffs have failed to sufficiently allege an "as-applied" challenge to § 12.72.090.  (Id. at 9-10.)

///

13

1                **2.   Standards**

2

3     A facial challenge is a challenge to an entire legislative

4 enactment or provision. <u>Foti v. City of Menlo Park</u>, 146 F.3d

5 629, 635 (9th Cir. 1998) (explaining that a statute is facially

6 unconstitutional if "it is unconstitutional in every conceivable

7 application, or it seeks to prohibit such a broad range of

8 protected conduct that it is unconstitutionally overbroad"). "An

9 as-applied First Amendment challenge contends that a given

10 statute or regulation is unconstitutional as it has been applied

11 to a litigant's particular speech activity." <u>Legal Aid Servs of

12 Oregon v. Legal Servs Corp</u>., 608 F.3d 1084, 1096 (9th Cir. 2010)

13 (citing <u>Members of City Council of City of L.A. v. Taxpayers for

14 Vincent</u>, 466 U.S. 789, 802-03 (1984)). The underlying

15 constitutional standard is the same for both a facial and an

16 as-applied challenge. (<u>Id.</u>)

17     The First Amendment states, in relevant part, that "Congress

18 shall make no law . . . abridging the freedom of speech, . . . or

19 the right of people peaceably to assemble. . . ." U.S. Const.

20 amend. I. The Supreme Court has held that the First Amendment's

21 prohibitions also apply to state and local governments. <u>See

22 Lovell v. City of Griffin</u>, 303 U.S. 444, 450 (1938).

23     Furthermore, "[t]he protections afforded by the First

24 Amendment are nowhere stronger than in streets and parks, both

25 categorized for First Amendment purposes as traditional public

26 fora." <u>Berger v. City of Seattle</u>, 569 F.3d 1029, 1035-36 (9th

27 Cir. 2009) (citing <u>Perry Educ. Ass'n v. Perry Local Educators'

28 Ass'n</u>, 460 U.S. 37, 45 (1983).

1    In such "quintessential public forums, the government may not
2    prohibit all communicative activity.  For the state to enforce a
3    content-based exclusion it must show that its regulation is
4    necessary to serve a compelling state interest and that it is
5    narrowly drawn to achieve that end."  Perry, 460 U.S. at 45.

6         However, even in a traditional public forum the government
7    may impose reasonable restrictions on the time, place, or manner
8    of protected speech, provided the restrictions "are justified
9    without reference to the content of the regulated speech, that
10   they are narrowly tailored to serve a significant governmental
11   interest, and that they leave open ample alternative channels for
12   communication of the information."  Ward v. Rock Against Racism,
13   491 U.S. 781, 791 (1989) (quoting Clark v. Cmty. for Creative
14   Non-Violence, 468 U.S. 288, 293 (1984)).  Notably, "narrowly
15   tailored" does not mean the "least restrictive or least intrusive
16   means of" achieving a government's legitimate content-neutral
17   interests.  Ward, 491 U.S. at 798.

18        The level of scrutiny depends on whether the challenged
19   ordinance is "related to the suppression of free expression."
20   Texas v. Johnson, 491 U.S. 397, 403 (1989) (internal quotation
21   marks and citation omitted).  "If a law hits speech because it
22   aimed at it, then courts apply strict scrutiny; but if it hits
23   speech without having aimed at it, then courts apply the O'Brien
24   intermediate scrutiny standard."  Nordyke v. King, 644 F.3d 776,
25   792 (9th Cir. 2011) (citing United States v. O'Brien, 391 U.S.
26   367, 377 (1968).

27   ///

28   ///

15

### 3.   Analysis

#### a.   City Code Section 12.72.090 is a facially valid reasonable time, place and manner restriction

##### (1)   Content Neutral

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward, 491 U.S. at 791 (citing Cmty. for Creative Non-Violence, 468 U.S. at 293).  Here, § 12.72.090 does not make reference to prohibiting any kind of speech or expression, its prohibition against remaining in the parks after certain hours merely regulates the hours that anyone can remain in City parks.  The fact that § 12.72.090 applies to all Park users who have not obtained a permit to remain in the Park supports the conclusion that it is content-neutral.  See Thomas v. Chicago Park Dist., 534 U.S. 316, 322 (2002) (noting that a park ordinance that required a person seeking to hold an event involving more that fifty individuals, or engage in an activity, such as one involving amplified sound, to obtain a permit, was directed at "all activity conducted in a public park.  The picnicker and soccer player, no less than the political activist or parade marshal, must apply for a permit if the 50-person limit is to be exceeded.").

///

///

///

16

1    Furthermore, the Court notes that the ordinance at issue
2    here was enacted in the 1970s and has been in its present form
3    since its amendment in 1981.  (See ECF 23, Ex. C).  The situation
4    here is therefore significantly different from the one faced by
5    "Occupation" demonstrators in some other cities where the
6    demonstrators sought to obtain a TRO when officials sought to
7    enact and enforce prohibitions or limitations on access to public
8    land after the protests began.  For example, in Nashville,
9    Tennessee, officials allegedly enacted a policy after
10   demonstrators began gathering in a public space that established
11   a curfew and permit regulations on public land.  There, a federal
12   district court granted Plaintiffs a TRO.  See Keppler v. Haslam,
13   2012 WL 589531, at *1 (M.D. Tenn. 2012).  Similarly, in Trenton,
14   New Jersey, officials established rules prohibiting visitors to a
15   memorial from bringing certain property onto the public land
16   after Occupy demonstrators began congregating.  There again, the
17   court granted a TRO.[6]

18   The Nashville and Trenton cases are instructive because in
19   both those cases, government officials enacted new prohibitions
20   on the use of public fora following the arrival of the "Occupy"
21   protestors on public land.  In contrast, here, § 12.72.090
22   predates the Occupy Sacramento demonstrations by roughly thirty
23   years, there is no allegation that the City was not enforcing it
24   prior to October 6, when Plaintiffs began congregating in the
25   Park, and there is evidence that the City has been consistently
26   enforcing the ordinance since the demonstrations started.

27   _____

28       [6] See, e.g.,"ACLU-NJ Wins Temporary Restraining Order in Favor
     of Occupy Trenton Protesters," States News Service, Nov. 7, 2011.

1    While § 12.72.090 does have the direct effect of limiting

2  speech and expressive activities in City parks during those hours

3  during which people are not permitted to remain or loiter in the

4  parks, the Court notes that "reasonable time, place, or manner

5  regulations normally have the purpose and direct effect of

6  limiting expression but are nevertheless valid." Cmty. for

7  Creative Non-Violence, 468 U.S. at 294 (citation omitted). Here,

8  Plaintiffs have not alleged any content-based purpose behind

9  § 12.72.090, the Court finds there is none, and the Court

10 concludes § 12.72.090 is content-neutral.

11

12                    **(2)  Narrowly Tailored**

13

14    As the Supreme Court has noted, "any permit scheme

15 controlling the time, place, and manner of speech must not be

16 based on the content of the message, must be narrowly tailored to

17 serve a significant governmental interest, and must leave open

18 ample alternatives for communication." Forsyth County, Ga. v.

19 Nationalist Movement, 505 U.S. 123, 130 (1992).

20 Any such regulation of speech or speech-related conduct is

21 overbroad–and therefore facially invalid-if it punishes a

22 substantial amount of protected speech, "'judged in relation to

23 the regulation's plainly legitimate sweep.'" Virginia v. Hicks,

24 539 U.S. 113, 118 (2003) (quoting Broadrick v. Oklahoma, 413 U.S.

25 601, 615 (1973).

26 ///

27 ///

28 ///

1    Here, Plaintiffs contend that § 12.72.090 is either
2    over-broad or under-inclusive and is not "narrowly tailored"
3    because it "denies the public an important venue for free speech
4    and assembly during a substantial part of the night."
5    (Plaintiffs' Opposition ("Opp."), ECF No. 24 at 8.)  They argue
6    that § 12.72.090 does not advance a legitimate government
7    interest and they assert that a continuous around-the-clock
8    presence in the Park for an indeterminate period of time is "a
9    necessity of participation for some Occupy Sacramento
10   protesters." (Id. at 11.)  Plaintiffs also attempt to
11   distinguish this case from similar time, place and manner cases
12   by arguing that the purpose of the hours restriction cannot be
13   for crowd control, or because the park may be dangerous, and they
14   ask that if the purpose is for public health and safety, why
15   doesn't the ban extend to all streets and sidewalks. (Id. at 10-
16   11.)  Plaintiffs do not, however, provide any evidence that
17   suggests the purpose of the challenged section.

18   Defendant Jim Combs, the current Director of Sacramento's
19   Department of Parks and Recreation, filed a declaration in
20   opposition to Plaintiffs' request for a TRO, in which he stated,
21   among other things, that the City's park use regulations are:

22          intended to ensure the ability of the general public to
            enjoy the park facilities, to ensure the viability and
23          maintenance of those facilities, to protect the
            public's health, safety and welfare, and to protect the
24          City's parks and public property from overuse and
            unsanitary conditions, including but not limited to,
25          camping and overnight sleeping activities in City parks
            not specifically designed for those purposes.
26

27   ///

28   ///

19

1  (Decl. of Jim Combs (Combs Decl.”), ECF No. 13 at 2.)  Plaintiffs
2  contend that Combs' opinions should be given no weight because
3  the regulations were enacted twenty-six years before his tenure
4  as Parks Director began, so his opinion is just a post hoc
5  rationalization and should be ignored by the Court.  (Opp., ECF
6  No. 24 at 9-10.)

7      The Court disagrees.  Plaintiffs offer only speculation as
8  to the alleged expression-stifling purpose of § 12.72.090,
9  whereas the Parks Director's declaration is consistent with the
10  text of the City Code, which notes that the purpose of Section 27
11  "is to promote the safety, comfort, and convenience of the
12  public's use and enjoyment of any park . . ." (see ECF No. 23,
13  Ex. C at 26), and which contains numerous limitations and
14  prohibitions on specified activities in the parks for health and
15  safety reasons (see id. at 29-32), as well as the 1981 staff
16  report, which establishes that the 1981 amendments are "to better
17  accommodate use and to mitigate interference with the general
18  public's enjoyment of park facilities and buildings" (id. at 39).
19  In short, the Court finds the Parks Director's statement of the
20  purpose for the park use regulations to be persuasive and
21  compelling.

22      On the other hand, Plaintiffs argument that § 12.72.090 is
23  either over-broad or under-inclusive and is not narrowly-tailored
24  is not compelling.  The ordinance is limited to City parks and
25  limited to five or six hours a day between the hours of
26  11:00 p.m. and 5:00 a.m.
27  ///
28  ///

Section 12.72.090 does not prevent Plaintiffs from conducting their expressive activities twenty-four hours a day on adjoining sidewalks or in other public spaces if they so choose.  It just prevents them from doing so by remaining in City parks after the hours established by the ordinance if they do not have a permit to do so.  It is therefore not overbroad.  Neither is it under-inclusive.  The fact that § 12.72.090 applies to parks and not to sidewalks or other public places does not lead inevitably to the conclusion that the hours restrictions are intended to stifle free expression in City parks, as Plaintiffs imply.

As the Court noted in its Order denying Plaintiffs' request for a TRO, the Supreme Court's reasoning in Cmty. for Creative Non-Violence particularly informs the Court's views of the challenged Sacramento City Code section here.  (ECF No. 17 at 17-18)  At issue in Cmty. for Creative Non-Violence were regulations that stated that camping in national parks is permitted only in campgrounds designated for that purpose. 469 U.S. at 289-92.  There, the plaintiffs wanted to camp in Lafayette Park (which is located in Washington, D.C., across the street from the White House) and on the National Mall to demonstrate in support of the plight of the homeless, however neither of these public parks were designated campgrounds under the particular regulations at issue.  Id. at 291-92.  In challenging these regulations, the plaintiffs argued, among other things, that they violated the First Amendment.  Id. at 293.

///

///

///

21

1    The Supreme Court, however, found that the regulations were

2    content-neutral time, place or manner restrictions.  Id. at 295.

3    Although the Court agreed that the tents and the act of sleeping

4    out could all potentially be expressive activity and that the

5    regulation at issue prohibited those activities in Lafayette Park

6    or on the Mall, the Court nonetheless noted that the regulations

7    were narrowly tailored to serve the substantial government

8    interest in "the parks in the heart of the Capital in an

9    attractive and intact condition, readily available to the

10   millions of people who wish to see and enjoy them by their

11   presence.  To permit camping would be totally inimical to these

12   purposes."  Id. at 296.  The Court also noted that if it were to

13   find the regulation was invalid on First Amendment grounds,

14   "there would be other groups who would demand permission to

15   deliver an asserted message by camping in Lafayette Park" and

16   that this "would present difficult problems for the Park

17   Service."  Id.

18        Although camping is not directly at issue in this case, as

19   Plaintiffs contend they will be conducting around-the-clock

20   speech and expressive conduct, the Court finds the City's

21   interests at issue here are substantially similar to the

22   government interests that were found to be constitutionally

23   sufficient in Cmty. for Creative Non-Violence.[7]

24

25        [7] Although not directly at issue, the Court notes that
     Plaintiffs, as part of their activities would, presumably, also
26   be sleeping and camping in the Park.  Although that issue was not
     raised in this action, Plaintiffs' counsel, in his October 6,
27   2011, state court petition for a TRO did seek to prevent the City
     from enforcing its prohibition on illegal camping (City Code
28                                                   (continued...)

1  Specifically, the City has a substantial interest in ensuring and
2  protecting the: (1) ability of the general public to enjoy the
3  park facilities, (2) viability and maintenance of those
4  facilities, (3) public's health, safety and welfare, and
5  (4) City's parks and public property from overuse and unsanitary
6  conditions.  (See Combs Decl., ECF No. 13 at 2.)  A regulation
7  that prohibits the public's use of the parks for five to six
8  hours a day – in the middle of the night – serves these
9  interests.  The Court therefore concludes that § 12.72.090 is
10  both narrowly tailored and that it serves a substantial
11  government interest.

12

13                  **(3)  Alternatives for Expression**

14

15       Plaintiffs contend that by closing the park to the public
16  for five to six hours every night, they have been deterred from,
17  and must refrain from, engaging in their expressive activities.
18  (FAC, ECF No 9 at ¶¶ 8-14.)  Plaintiffs generally argue that for
19  the purposes of solidarity, to reach the maximum number of
20  passer-by, as well as to communicate with people around the
21  nation and around the world, they need to maintain a continuous
22  presence in the Park.  (Id.)
23  ///
24  ///
25  ///

26  _____

27      [7](...continued)
    § 12.52), as well as from enforcing § 12.72.090.  (See ECF
28  No. 23, Ex. A at 5.)

1  However, contrary to Plaintiffs' assertions, they are not
2  prevented from maintaining a continuous presence in the area, or
3  from continuing their communications around the clock:
4  § 12.72.090 just prohibits them from remaining in City parks
5  after the hours established by the ordinance if they do not have
6  a permit to do so.   For eighteen to nineteen hours a day,
7  Plaintiffs may engage in their activities in the Park.   After
8  park hours, for five or six hours a night, Plaintiffs may
9  continue their expressive activities on the streets and sidewalks
10 or other public fora.

11
12                    **(4)   Sufficient Guidelines for the Parks
                              Director**
13

14      Plaintiffs argue that § 12.72.090 gives the Parks Director
15 "unbridled discretion" to permit the after-hours use of the Park
16 and contains "no standards" governing the Park Director's
17 discretion."   (See FAC, ECF No. 9 at 6; Opp., ECF No. 24 at 7-8.)
18 Plaintiffs contend that the Parks Director "may sponsor or
19 cosponsor after-hours park activities, without restriction, and
20 persons attending such activities are exempt from the park
21 closure rules."   (Opp. at 7. (citing § 12.72.090(B)(2).)   In
22 addition, with the concurrence of the Chief of Police, the Parks
23 Director may extend park hours when he determines "'that such
24 extension of hours is with sound use of park resources, will
25 enhance recreational activities in the city, and will not
26 be detrimental to the public safety or welfare.'"   (Id. at 7-8
27 (quoting § 12.72.090(C).)
28 ///

                                  24

1   Where the licensing official enjoys unduly broad discretion
2   in determining whether to grant or deny a permit, there is a risk
3   that he will favor or disfavor speech based on its content."
4   Thomas, 534 U.S. at 323 (citing Forsyth County, 505 U.S. at 131).
5   The underlying concern is that "in the area of free expression a
6   licensing statute placing unbridled discretion in the hands of a
7   government official or agency constitutes a prior restraint and
8   may result in censorship."  City of Lakewood v. Plain Dealer Pub.
9   Co., 486 U.S. 750, 757 (1988) "Therefore, a facial challenge lies
10  whenever a licensing law gives a government official or agency
11  substantial power to discriminate based on the content or
12  viewpoint of speech by suppressing disfavored speech or disliked
13  speakers."  Id. at 759.  Thus, the Supreme Court has "required
14  that a time, place, and manner regulation contain adequate
15  standards to guide the official's decision and render it subject
16  to effective judicial review."  Thomas, 534 U.S. at 323.
17  However, where the official's discretion is limited and is guided
18  by "narrowly drawn, reasonable and definite standards," see
19  Forsyth County, 505 U.S. at 133 (internal quotation marks
20  omitted), and is therefore "subject to effective judicial
21  review," Thomas, 534 U.S. at 323, it may be upheld.
22      In Thomas, the Supreme Court addressed the issue of whether
23  Chicago Park District officials had unduly broad discretion in
24  determining whether to grant or deny a permit to use a municipal
25  park.  534 U.S. at 317-18.  Under the challenged city ordinance,
26  the Park District was given discretionary authority to deny a
27  permit on several specified grounds.  Id. at 318-20.
28  ///

1  The petitioners contended that the criteria set forth in the
2  ordinance were insufficiently precise because they gave the Park
3  District discretionary authority to deny applications rather than
4  specific grounds on which the application must be denied.  Id. at
5  324.  The Supreme Court, however, concluded that the Park
6  District's discretion was not overbroad and upheld the ordinance.
7  Id. at 325.

8       Here, Plaintiffs' do not directly address the Park
9  Director's licensing authority to grant or deny permits to use
10 City parks.  Rather, they expend the majority of their argument
11 on the Park Director's authority to sponsor after-hours
12 activities and to extend park hours, with the concurrence of the
13 Police Chief, under certain conditions.[8]

14      Plaintiffs' decision to avoid discussing the Parks
15 Director's permitting authority may relate to the explicit
16 guidelines that are contained in the City Code.
17 ///
18 ///
19 ///
20

21      [8] § 12.72.090(B)(2) states that the park hours regulations
   shall not apply to "any person attending a meeting, entertainment
22 event, recreation activity, dance or similar activity in such
   park provided such activity is sponsored or co-sponsored by the
23 department of parks and community services or a permit therefor
   has been issued by the department of parks and community
24 services."  § 12.72.090(C) grants the Parks Director
   discretionary authority, with the concurrence of the Chief of
25 Police, to extend park hours, subject to three conditions.
   Specifically, it permits the Director to extend park hours when
26 the Parks Director determines that (1) such extension of hours is
   consistent with sound use of park resources, (2) the extension
27 will enhance recreational activities in the city, and (3) the
   extension will not be detrimental to the public safety or
28 welfare.

1   Specifically, City Code § 12.72.180, "Action on Application -

2   Grounds for Denial - Procedure" establishes that the Parks

3   Director "shall" grant a park use permit, unless the permit

4   cannot be granted on the basis of any of several enumerated

5   exceptions (e.g., failure to file a timely permit; the proposed

6   activity would violate the law; etc.). (See Declaration of Brett

7   M. Witter, ECF No. 12, Ex. A at 7-8). Furthermore, Section

8   12.72.180 explicitly provides that "[a]ny decision of the

9   director may be appealed by the applicant to the city manager

10  pursuant to Section 12.72.190." (Id. (citation omitted).)

11       The Court therefore concludes that the Park Director's

12  discretionary authority to grant or deny permits to use City

13  parks is expressly limited by § 12.72.180, which also provides

14  for an appeal process and Plaintiffs have not shown any evidence

15  that judicial review of the Parks Director's permitting decision

16  is unavailable.  These limitations are similar to the ones upheld

17  in Thomas and the Court finds that they withstand Plaintiffs'

18  facial challenge.  See Thomas, 534 U.S. at 323  Further, to the

19  extent that Plaintiffs are generally challenging the Parks

20  Director's authority to extend park hours under § 12.72.090(B)(2)

21  and § 12.72.090(C), the Court also finds that the Parks

22  Director's discretionary authority is sufficiently cabined by the

23  City Code to defeat Plaintiffs' facial challenge.[9]

24

25       [9] In addition, the Court notes that Plaintiffs apparently
    waited until the November 3, 2011, date of their hearing on their
26  request for a TRO in this Court before they ever applied for a
    permit to use the Park.  (See ECF No. 17 at 6.)  While the Court
27  notes that it was not necessary for Plaintiffs to have applied
    and been denied a permit before bringing their facial challenge,
28                                                  (continued...)

1    In sum, the Court finds that § 12.72.090 is a reasonable

2  time, place and manner restriction on speech that: (1) is

3  content-neutral; (2) is narrowly tailored to serve a substantial

4  government interest; (3) leaves open ample alternatives to

5  expression; and (4) includes adequate guidelines to appropriately

6  limit the Park Director's discretionary authority.

7

8                **b.   As Applied to Plaintiffs**

9

10    In their FAC, Plaintiffs' argue their "as applied" challenge

11  is based on their contention that defendants routinely sponsor

12  and cosponsor after-hours events in Cesar Chavez Plaza but

13  strictly enforce the park closure hours against plaintiffs.  (FAC

14  at ¶¶ 12, 16; Opp. at 8.)  This contention, however, is a legal

15  conclusion disguised as a factual allegation, is conclusory, and

16  is unsupported by any factual allegations: it therefore violates

17  the pleading requirements set forth by Rule 8(a) and the Supreme

18  Court decisions of Iqbal and Twombly.  See, e.g., Twombly,

19  550 U.S. at 555 (noting that "a plaintiff's obligation to provide

20  the 'grounds' of his 'entitle[ment] to relief' requires more than

21  labels and conclusions, and a formulaic recitation of the

22  elements of a cause of action will not do." (Quoting Rule 8(a).)

23  ///

24

25            [9](...continued)

26  some evidence of effort by the Plaintiffs to comply with the
    City's permitting requirements would have given their arguments
    greater force.  In addition, the Court notes that although

27  Plaintiffs' permit request was apparently ultimately denied on
    November 7, 2011, neither party discusses this issue in the

28  context of the Motion to Dismiss.

There is nothing, other than this conclusory statement, in the record to support Plaintiffs' "as applied" contention.

Furthermore, Plaintiffs' allegation does not even necessarily support the conclusion that the Parks Director is unconstitutionally applying § 12.72.090 to them.  Even if it were true that the Parks Director was routinely sponsoring after hours events, absent facts stating otherwise, that would be within his authority under §§ 12.72.090(B)(2) and (C).  The fact that the Director was also enforcing the park closure hours set forth in § 12.72.090 against Plaintiffs, a group that does not have a permit for after hours use of the Park, does not lead to the conclusion that the Parks Director is unconstitutionally applying the ordinance against one group.  As alleged, one group had a right to be in the Park, while the other did not.

In sum, the Court concludes that § 12.72.090 is a facially valid time, place and manner restriction.  The Court also concludes that Plaintiffs have failed to sufficiently state an "as-applied" challenge.  The Court therefore grants Defendants' motion to dismiss the first three counts of Plaintiffs' FAC. Furthermore, the Court concludes that leave to amend would be futile.  First, the statute is constitutional, so no amendment will assist Plaintiffs. Second, Plaintiffs have foregone the opportunity to seek leave to amend because the Court produced a detailed Order following the November 4, 2011, hearing explaining the substantive reasons the Court viewed Plaintiffs as having little chance of succeeding on the merits, and yet Plaintiffs never sought leave to amend.

///

1    Because Plaintiffs cannot succeed on their first three
2    Counts, which raise the facial and as applied challenges to
3    § 12.72.090, they also cannot succeed on Count Four, which
4    contends that, because of the alleged constitutional violations,
5    Defendants are liable for specified money damages under the "Bane
6    Act," Cal. Civ. Code. § 52.1.  (FAC at 8-9).  Defendants' motion
7    to dismiss that cause of action is therefore also granted without
8    leave to amend, as amendment would be futile.
9    Finally, Defendants' motions to (1) dismiss John Shirley and
10   Jim Combs; and (2) strike any reference to Plaintiffs' facial
11   challenge to § 12.72.090 (as an alternative argument in the event
12   that the Court did not dismiss the first three counts) are now
13   both moot.

**CONCLUSION**

17   As a matter of law, and for the reasons set forth above, the
18   City's Motion to Dismiss (ECF No. 23) is GRANTED without leave to
19   amend.  The Clerk of the Court is directed to close this case.
20   IT IS SO ORDERED.

Dated: July 10, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

30